3, 17, 0, 8, 4, 0, Inre Marriage of Edward Grimm, Gap, Lee, by Kirk Bode, and Thomas Grimm, Appellate, by Michael Fritz. Mr. Fritz. Good morning, Your Honor. Your Honor, Michael Fritz for the Appellate, Thomas Grimm. Appellate, Kirk Bode. We're here today on two prevalent issues on the maintenance review case. I represent Thomas Grimm. We brought before the court two main issues as it regards to maintenance modifications, which we believe that the appellant is contradictory to the very nature of the fundamental purpose of spousal support, which is to basically allow one partner to maintain the lifestyle of the marriage had marriage not been dissolved. In particular, Your Honor, we are arguing, first of the court here, by not terminating maintenance. The history of this case is we're looking at 2011. Judge Mayer gave a rarely expensive specified ruling for reviewable maintenance. She ordered three years of maintenance at $325,000. In her ruling in 2011, she enumerated each factor therein and specified the reasons for her ruling. Of particular note, she ordered that the appellee in this case, Deborah Grimm, was to, quote, receive preventive coding education or to better herself in employment or the equivalent thereof. As from the facts of the case during Mr. Grimm's motion to terminate maintenance, which he filed in 2016 approximately five years or four and a half years after the initial 2011 order for maintenance, Ms. Grimm had not passed the medical coding budget. In fact, she is not working two jobs as she was in 2013 and 2014. She simply reverted back to a waitress job, which she maintained back in 2011 when the order was entered. Mr. Grimm, in the meantime, had maintained during the marriage an income of approximately $70,000 to $80,000. The economy was bad in 2011. It decreased to about $50,000. He received new employment at the time of maintenance termination of making approximately $87,000. If the court were to reexamine the lifestyle of the marriage, he filed for bankruptcy during the marriage. He accumulated most of the debt and filed for bankruptcy. So his standard of living himself had not changed. We would argue for the court's failure to terminate maintenance that Ms. Grimm or Deborah Grimm was failing to essentially earn additional income or maintain a higher level of employment of her own human. She was not disabled. She had no learning disability. She was not hampered by child care. In fact, two of her children were past high school. She had one high school-age child. When looking specifically at Second Judge Keith's ruling,  in fact, 510C1, I believe, the court's legislature requires that the court mandate a listing or a numerification of his findings so that we as litigants or the court can understand where and why the court reached a decision. I would say that the court erred in its discretion and did not list one iota of his reasoning. That is why I put the court's specific ruling in my appeal for the justices to review his decision and find the error. In the alternative, Your Honors, we argued that the court, if it were to allow maintenance and was not there for terminating maintenance, that it was failing to properly accumulate or account for the duration. We cited, I believe, the court utilized 504B for the duration of maintenance, not only increasing his maintenance amount from $300 a month to $1,600 a month, but extending that maintenance duration to over 17 years. What I find arbitrary is the court's decision to apply that particular language in the statute, that 504 on a 510 modification, but importantly, he chose a date in February, February 2016. It should be of note that the court's date for retroactivity of the modification was neither the date of my client's filing of the motion for termination of the appeal, neither was it the filing date of Ms. Grimm's motion to extend and review maintenance. We believe that this was an arbitrary number, and the court erred in applying that number. Mr. Bode. Thank you. If you may please report, counsel. My name is Cliff Bode. I represent the interests of Deborah Grimm, who is the appellee in this case, the recipient of the maintenance award that Mr. Grimm ceased to terminate. Obviously, some fundamental principles of the trial court in this case did have the opportunity to see the clients, witnesses, hear the testimony, and as the court determined maintenance, what's appropriate, the court also took into account the behavior of Thomas Grimm during the case, which included that he, at some point, unilaterally terminated dame maintenance. He failed to give my client a share of the tax refund, and he quit dame child support without a court order because one of the children turned 18. None of those are here on appeal, but I think that shows that the trial court took those into account. The trial court also took into account the factors set forth in the briefs about the circumstances of each party. Parties were married in excess of 21 years. My client, Deborah, raised three children. She was a stay-at-home mom by agreement. She delayed her education, her employment, because she only had a high school education, and while the children were at home, she worked in the cafeteria at the children's private school to be with her children and also to defray the cost of the education. Once the divorce was filed, she began working at Cracker Barrel as a waitress and then also worked at a women's clothing store part-time, and then eventually the store went out of business, and she focused then on her career at Cracker Barrel, which is where she was working at the time of the hearing. Her actual income at the time of the hearing was $21,000, which Judge Keith imputed up to $25,000. Thomas Grimm filed his petition to terminate maintenance, claiming that Deborah had not used sufficient efforts to pursue her degree in medical coding or her career in medical coding, and the evidence in the case was that she prepared for that test, took the test, and I think in her words, she failed miserably. Judge Keith, in his findings, found that she did not have the aptitude for that career. He found her career really at Cracker Barrel was really the maximum that she was capable of, given her employment history, her education history, and significant health issues, which included Bell's palsy occurring regularly, whereas she stated no one must be waited on by a waitress who has to take their eye open or have their eye taped shut. So her circumstances were in direct contrast to Thomas, who, during the marriage, got his MBA and got a good job, and then after the marriage, continued to climb the ladder because he had education that they got during the marriage. So we believe that the maintenance award by Judge Keith was appropriate. Now, I am mindful that this court issued a ruling about four weeks ago on a case called Cooper, K-U-P-E-R, and as I read that in preparation for today, I was somewhat very interested in the facts, and the facts were somewhat similar. And in that case, the Cooper case, the trial court in that case, very similarly to this case, increased the maintenance award from $225 per week up to $3,767 per month. And in that case, much like our case, the trial court utilized the new guidelines under the statute that became effective January 1, 2015. This court reversed the trial court's ruling in the Cooper case, finding that it was inappropriate for the trial court to utilize the new guidelines. Let me ask you, did you brief this Cooper case? I read it, yes. Okay, but it's not in the brief. So out of fairness to opposing counsel and both of you, why don't, if you want to submit, if you think it's important, and want to submit a supplemental brief within 14 days, and you respond within seven days, is that okay? Because to argue a case that hasn't been briefed, it would be fair to everybody if you did it that way, I think. Okay, fine. Thank you. We believe in this case the trial court, Judge Keith, took ample opportunity to review all the facts. He gave his decision in an organized fashion. Granted, he didn't go through each of the factors one item at a time, but in his comments and his ruling, his oral ruling, he covered the factors, including the main one raised by Thomas Grimm, which was that she had failed to exercise sufficient efforts to obtain full-time employment. So we believe that given the circumstance of the case, the increase of maintenance from 300-some dollars to about $1,600 was reasonable under all the circumstances, especially the very disparate circumstances each party found themselves in at the time of the trial. So I would urge the court, notwithstanding the Cooper case, to affirm Judge Keith's ruling. Thank you. Could you speak more to the second issue? With regard to? The retroactive case. Judge Keith, Thomas Grimm filed his in November, so I urge the trial court to make the relief retroactive to when Mr. Keith put the issue of maintenance at issue. I didn't file on behalf of Deborah our petition to increase maintenance until the following June. In all honesty with this court, Judge Keith picks February 2nd rather arbitrarily. Maybe it appears to be some type of compromise. Because I was urging November 5th, Mr. Grimm's counsel was urging June at the earliest, and he said February 2nd. What's the statute say? Well, it would be what the time of filing. And we filed a petition increase in June, I admit that. But I believe they put an issue when they filed in November to terminate and review maintenance. There's an argument that should be effected that day. Nothing happened in February. Nothing really happened in February. They think that was a compromised date by Judge Keith. In all honesty. Interesting. Okay. Thank you. Thank you. Mr. Fitz, some rebuttal. I'd just like to address briefly Mr. Grimm's disability and the lack thereof. Mr. Bode correctly stated that she suffered from cerebral palsy. Bell's palsy. Bell's palsy, I'm sorry. Yes, that's correct. And also maintained the job at Franklin Courthouse. I think that the importance of that goes back to Judge Mayer's ruling in 2011. That was specifically ordered in 2011 and addressed in 2011. Not only in the August order of 2011, but a subsequent order in October of 2011, which Judge Mayer ordered twice that she pursue an education in medical coding, better for employment, or the equivalent. They are of emphasis added. The reason I say that is because per Ms. Grimm's testimony, in my case, with Judge Keith, she had no disability. All those medical ailments occurred when Judge Mayer heard the case. All the children were adults. They went to high school. There was nothing keeping her from pursuing her education, nothing keeping her from bettering her employment other than Cracker Barrel. In fact, the evidence in her own testimony will be that subsequent to 2011, so subsequent to the initial maintenance being ordered, Ms. Grimm held a second assistant manager job in addition to Cracker Barrel in 2013 and 2014. What she was not able to explain on the stand is why she didn't pursue a second career as assistant manager after that score closed. There was nothing preventing her to do that. What is also of emphasis on is that her career at Cracker Barrel was part-time. She's not a manager in a restaurant. She's not working 40 hours a week. What she was doing was she stopped taking the medical coding examination because for whatever reason she couldn't pass the test. She quit her second job without explanation why she received a second one and was complacent in working part-time as a waitress at Cracker Barrel. That was the same circumstance of what she was in in 2011, and I believe the court erred in benefiting her by awarding maintenance to her in 2016. She did not meet what she was ordered to do in 2011 for that reason. That was just one of the factors we asked that this court is going to make maintenance. Thank you. Thank you. Thank you both for your arguments here today. What I'm going to suggest as we go back here is that Mr. Bode will give you 14 days to file something, a brief. Mr. Fritz will give you an equal 14, and I don't know whether a by-brief will be necessary or not. Thank you. All right. Well, thank you, and we'll take this matter under advisement. We'll await your briefs. A written disposition will be issued, and we'll be in recess until 1.15. Is there another case this morning? Oh, we won't be in recess until 1.15. We'll have a brief recess for a panel change before the next case. Thank you.